UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARA CAMPOS,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, NA,<br><br>Defendant. | Case No. 18-cv-06169-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS, OR IN THE ALTERNATIVE, STAY JUDICIAL PROCEEDINGS; DEFENDANT'S MOTION TO STAY DISCOVERY**<br><br>Re: Dkt. Nos. 17, 18 |

Plaintiff Clara Campos sues Defendant JPMorgan Chase Bank under the Americans with Disabilities Act ("ADA") and the California Fair Employment and Housing Act ("CFEHA") for alleged employment discrimination based on disability. (Dkt. No. 1.)[1] Now pending before the Court are Defendant's motion to compel arbitration and dismiss, or in the alternative, stay proceedings, and accompanying motion to stay discovery.[2] (Dkt. Nos. 17 & 18.) After careful consideration of the parties' briefing, and having had the benefit of oral argument on February 21, 2019, the Court GRANTS Defendant's motion to compel arbitration and DISMISSES the case without prejudice, and DENIES as moot Defendant's motion to stay discovery.

## BACKGROUND

### I.    Complaint Allegations

Plaintiff was employed by Defendant at its San Leandro, California branch "as a relationship banker from approximately May 24, 2010 until August 19, 2017." (Dkt. No. 1 at ¶ 5.) In 2016, "Plaintiff began experiencing migraine headaches almost every day." (*Id.* at ¶ 9.)

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 7 & 10.)

Plaintiff informed her supervisor of her disability in November 2016 and requested a day off for a medical procedure. (*Id.* at ¶ 10.) Plaintiff's supervisor denied Plaintiff's request for leave. (*Id.*)

In December 2016, "Plaintiff was diagnosed with a chronic condition affecting her musculoskeletal and neurological systems[,]" with symptoms "includ[ing] back problems and migraine headaches." (*Id.* at ¶ 11.) The following month, Plaintiff informed her supervisor "that she needed to leave work early because of a doctor's appointment." (*Id.* at ¶ 12.) Her supervisor "accused Plaintiff of lying and threatened Plaintiff with disciplinary action if she did it again." (*Id.*) Plaintiff filed a complaint against her supervisor with Defendant's human resources department ("HR") shortly thereafter. (*Id.* at ¶ 13.)

On January 13, 2017, Plaintiff's supervisor was informed that Plaintiff had "requested medical leave under the Family Medical Leave Act ('FMLA') and California Family Rights Act." (*Id.* at ¶ 14.) In February 2017, Plaintiff submitted to Defendant "FMLA paperwork authored by [Plaintiff's] healthcare provider." (*Id.* at ¶ 15.) The paperwork "requested that Plaintiff receive intermittent leave once every three months for medical treatment or 1-7 days per migraine episode." (*Id.*) A few days later, Defendant notified Plaintiff's supervisor "that it had approved Plaintiff's request for intermittent leave under the FMLA for the period January 19, 2017 [to] January 18, 2018." (*Id.* at ¶ 16.) After receiving this notification, Plaintiff's supervisor retaliated against Plaintiff by stating in her performance review "that Plaintiff had attendance problems." (*Id.* at ¶ 17.) Plaintiff's supervisor also gave Plaintiff a yearly bonus that was smaller than the bonus received by her colleagues and less than "Plaintiff's bonus for the prior year." (*Id.*) Plaintiff again filed a complaint against her supervisor with Defendant, and on February 14, 2017, Plaintiff met with her district manager to address those complaints. (*Id.* at ¶ 18.)

Plaintiff's supervisor continued to make "sarcastic comments about Plaintiff's disability," and in response, "Plaintiff sought a transfer [to] one of Defendant's other branches." (*Id.* at ¶¶ 19-20.) The branch manager of the Hayward branch informed Plaintiff that she could transfer to his team, but Plaintiff's district manager denied Plaintiff's request to transfer. (*Id.* at ¶ 20.) The district manager informed Plaintiff that she would have to formally apply for any position outside of the San Leandro branch. (*Id.*) This policy was inconsistent with Plaintiff's understanding of

Defendant's employee-transfer procedures.  (*Id.*)

In July 2017, "Plaintiff submitted a request to HR to work part-time because of Plaintiff's recurring migraine headaches."  (*Id.* at ¶ 21.)  At the time of Plaintiff's request, "the branch had eight full-time bankers."  (*Id.* at ¶ 22.)  Plaintiff's supervisor denied Plaintiff's request shortly thereafter, on the grounds "that the office could not afford a part-[time] banker."  (*Id.*)  Around the same time, Plaintiff's supervisor also "awarded a commission to one of Plaintiff's colleagues even though it . . . had been earned by Plaintiff."  (*Id.* at ¶ 23.)

In August 2017, "Plaintiff was constructively discharged from her employment because Defendant had harassed her and failed to accommodate her disability."  (*Id.* at ¶ 24.)

## II.      The Arbitration Agreement

Plaintiff accepted Defendant's offer letter describing the terms and conditions of her employment by signature dated May 11, 2010.  (*See* Dkt. Nos. 17-2 at ¶ 4; Ex. A at 6.)  The offer letter included a "Binding Arbitration Affirmation," also signed and dated by Plaintiff on May 11, 2010, stating:

> I understand my employment is subject to my and JPMorgan Chase's agreement to submit employment-related disputes that cannot be resolved internally to binding arbitration, as set forth in the Binding Arbitration Agreement http://www.jpmorganchase.com/pdfdoc/JPMCArbAgreement.  By signing below I acknowledge and agree that I have read and understand the Binding Arbitration Agreement, have accepted its terms and understand that it is a condition of my employment with JPMorgan Chase.

(Dkt. No. 17-2, Ex. A at 6.)  The attached Binding Arbitration Agreement ("Agreement") provides that "Any and all 'Covered Claims' (as defined below) between me and JPMorgan Chase . . . shall be submitted to and resolved final and binding arbitration in accordance with this agreement."  (*Id.* at 7.)  The Agreement defines "Covered Claims" as:

> includ[ing] all legally protected employment-related claims, excluding those set forth below in Paragraphs 3 and 4 of this Agreement, that I have or in the future may have against JPMorgan Chase or its officers, directors, shareholders, employees or agents which arise out of or relate to my employment or separation from employment with JPMorgan Chase and all legally protected employment-related claims that JP Morgan Chase has or in the future may have against me, including, but not limited to, claims of employment discrimination or harassment if protected by applicable

> federal, state or local law, and retaliation for raising discrimination or
> harassment claims, failure to pay wages, bonuses and other
> compensation, tortious acts, wrongful, retaliatory and/or constructive
> discharge, breach of an express or implied contract, promissory
> estoppel, unjust enrichment, and violations of any other common law,
> federal, state, or local statute, ordinance, regulation or public policy,
> including, but not limited to Title VII of the Civil Rights Act of 1964,
> the Civil Rights Acts of 1866 and 1991, the Age Discrimination in
> Employment Act of 1967, the Older Workers Benefit Protection Act
> of 1990, the Rehabilitation Act of 1973, the Americans with
> Disabilities Act of 1990, the Family and Medical Leave Act of 1993,
> the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963,
> Section 1981 of the Civil Rights Act, the Worker Adjustment and
> Retraining Notification Act, and the Sarbanes-Oxley Act of 2002.

(*Id.*)  The Agreement further provides that arbitration will be conducted "pursuant to the rules and procedures of the Employment Arbitration Rules of the AAA [(American Arbitration Association)] to the extent the AAA Rules do not conflict with the terms of this Agreement."  (*Id.* at 8.)  In the event of a conflict between the AAA Rules and the Agreement, the Agreement governs.  (*Id.*)

In March 2015, Plaintiff was promoted to "Relationship Banker," and pursuant to that promotion, she "executed a Chase Wealth Management Supervision, Arbitration, Confidentiality and Non-Solicitation Agreement ('CWMA')."  (Dkt. No. 17-2 at ¶ 5.)  The CWMA includes a section titled "Arbitration of Controversies," providing in pertinent part:

> Employment Disputes.   You acknowledge and agree that your
> employment is subject to your and [Defendant's] agreement to submit
> any and all employment-related disputes that cannot be resolved
> internally to binding arbitration, in accordance with the Binding
> Arbitration Agreement (attached). You acknowledge and agree that
> you have read and understand the Binding Arbitration Agreement,
> have accepted its terms and understand that it is a condition of your
> employment with [Defendant].

(Dkt. No. 17-2 at 15.)  Plaintiff signed the CWMA on March 13, 2015.  (*Id.* at 16.)  Plaintiff also initialed every page of the Binding Arbitration Agreement attached to the CWMA, which is substantively identical to the May 2010 iteration of the Agreement.[3]  (*Compare* Dkt. No. 17-2, Ex. A at 7-10 *with* Dkt. No. 17-2, Ex. B at 18-22.)

//

---

[3] The Court refers to both iterations of the Binding Arbitration Agreement as the "Agreement" because they do not materially differ.

### III. Procedural History

On October 8, 2018, Plaintiff filed a complaint against Defendant asserting the following causes of action: (1) disability discrimination in violation of the ADA, 42 U.S.C. §§ 12101 *et seq.*; (2) failure to engage in interactive process in violation of CFEHA, California Government Code § 12940(n); (3) failure to accommodate in violation of CFEHA, section 12940(m)(2); (4) disability discrimination in violation of CFEHA, section 12940(a); (5) failure to prevent discrimination and retaliation in violation of CFEHA, section 12940(k); (6) "wrongful discharge in violation of public policy"; (7) retaliation in violation of CFEHA, section 12940(h); (8) retaliation for requesting accommodation in violation of CFEHA, section 12940(m)(2); and (9) retaliation in violation of the ADA, 42 U.S.C. § 12203. (*See* Dkt. No. 1 at ¶¶ 27-80.)

Defendant filed the instant motions to compel arbitration and stay civil discovery on January 11, 2019.[4] (*See* Dkt. Nos. 17 & 18.) The motions are fully briefed, and the Court heard oral argument on February 21, 2019.

### LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that arbitration agreements in any "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, "arbitration agreements [are] on an equal footing with other contracts," and therefore courts are required to enforce arbitration agreements according to their terms. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 66 (2010). "Like other contracts, however, they may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* (internal quotation marks and citation omitted).

The FAA espouses a general policy favoring arbitration agreements. *AT&T Mobility v.*

---

[4] In support of its motions, Defendant requests judicial notice of documents of public record pursuant to Federal Rule of Evidence 201(b)(2). (*See* Dkt. Nos. 17-3 & 18-2 (requesting judicial notice of certain district court decisions in this circuit and the current American Arbitration Association ("AAA") Employment Arbitration Rules as of November 1, 2009).) Plaintiff does not oppose Defendant's request. Accordingly, the Court grants Defendant's request because the documents are "undisputed matters of public record." *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that judicial notice is appropriate for "undisputed matters of public record, including documents on file in federal or state courts.") (internal citation omitted).

United States District Court
Northern District of California

*Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 1745-46, (2011). Thus, courts must direct parties to proceed to arbitration should it determine: (1) that a valid arbitration agreement exists; and (2) that "the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (noting that "[i]f the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms."). The party seeking to compel arbitration "bears the burden of proving the existence of a valid arbitration agreement by [a] preponderance of the evidence." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (internal quotation marks and citation omitted). "[T]he party opposing arbitration bears the burden of proving by a preponderance of the evidence any defense, such as unconscionability." *Serafin v. Balco Props. Ltd.*, LLC, 235 Cal. App. 4th 165, 172-73 (Cal. Ct. App. 2015).

Courts shall resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). Where parties "contest the *existence* of an arbitration agreement," however, "the presumption in favor of arbitrability does not apply." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014).

## DISCUSSION

### I. Motion to Compel Arbitration

As the party seeking to compel arbitration, Defendant has the burden of demonstrating that a valid agreement exists to arbitrate the claims at issue. Defendant has met that burden. Plaintiff fails to carry her burden in opposition to Defendant's motion to compel of showing that the Agreement is procedurally and substantively unconscionable.

### A. The Arbitration Agreement is Valid and Covers the Claims at Issue

Courts must apply state law in determining whether a valid agreement to arbitrate exists. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009); *see also Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) ("To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of

contracts."). Here, both parties apply California law to their respective arguments as to the existence of a valid arbitration agreement. The Court will do the same in the absence of any dispute over the applicable state law.[5]

Under California law, contract formation requires "a manifestation of mutual assent." *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (Cal. Ct. App. 1999). "Mutual assent may be manifested by written or spoken words, or by conduct." *Id.* "Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014).

Here, Plaintiff does not dispute that she signed both the "Binding Arbitration Affirmation" portion of her March 2010 employment contract and the March 2015 CWMCA referencing "the Binding Arbitration Agreement (attached)." Plaintiff likewise does not dispute that she initialed every page of the Agreement attached to the CWMCA. It is thus clear that a reasonable person would believe that Plaintiff assented to the Agreement based on her signatures, which provide objective outward manifestations of her consent. *See Serafin*, 235 Cal. App. 4th at 173 ("Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.") (internal quotation marks and citation omitted).

In opposing Defendant's motion to compel, Plaintiff insists that the Agreement "failed to

_____

[5] The Court must apply the choice-of-law rules of the forum state—here, California—in determining "which state's laws to apply" in analyzing the validity of an arbitration agreement. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010). "Under California law, the choice-of-law rules differ depending on whether the parties have included a choice-of-law agreement in their contract, and if so, whether the claims being litigated fall within the scope of that agreement." *Id.* Here, the March 2015 CWMA provides that "[t]his agreement will be governed by the law of the State of New York, without regard to the conflicts of law principles thereof (as permitted by law)." (*See* Dkt. No. 17-2, Ex. B at 15.) Despite this choice-of-law provision, however, neither party addressed how California's choice-of-law rules apply. The parties instead simply applied California contract law. (*See* Dkt. Nos. 17 & 21.) In the absence of any dispute between the parties, the Court will thus apply California law. *See Fields v. Wise Media LLC*, No. C 12-05160 WHA, 2013 WL 12174296, at *3 (N.D. Cal. Jan. 25, 2013) (applying California law despite New York choice-of-law provision "[i]n the absence of any real dispute" and "[b]ecause there is no meaningful difference between the basic elements of contract formation according to the laws of New York or California") (citing *Bank Saderat Iran v. Telegen Corp.*, 30 Fed. App'x. 741, 743 (9th Cir. 2002); *Express Indus. & Terminal Corp. v. New York State Dep't of Transp.*, 93 N.Y.2d 584, 715 (N.Y. 1999)).

establish mutual assent of both parties as to the terms within the agreement" because the Agreement "was not executed by any Defendant." (*See* Dkt. No. 21 at 4-5.) As a result, the Agreement "was never effective, and Defendant's motion to compel arbitration fails to establish the existence of a legally binding arbitration agreement." (*Id.* at 5.) Plaintiff is wrong.

Under California law, "the writing memorializing an arbitration agreement need not be signed by both parties in order to be upheld as a binding arbitration agreement." *Serafin*, 235 Cal. App. 4th at 176. In *Serafin*, the court rejected the same argument set forth here—that the defendant-employer's failure to sign the arbitration agreement rendered the agreement unenforceable. The *Serafin* court noted that "it is not the presence or absence of a *signature* [on an agreement] which is dispositive; it is the presence or absence of evidence of an *agreement* to arbitrate which matters." (alteration in original) (internal quotation marks and citation omitted). The court found that the employer's conduct in authoring the agreement and later seeking to enforce it "evince[d] an intent to be bound by the arbitration agreement." *Id.* at 176-77. The court further noted:

> Just as with any written agreement signed by one party, an arbitration agreement can be specifically enforced against the signing party regardless of whether the party seeking enforcement has also signed, provided that the party seeking enforcement has performed or offered to do so.

*Id.* at 177 (citing Cal. Civ. Code § 3388).

Here, as in *Serafin*, Defendant authored the Agreement and provided it to Plaintiff in connection with her employment. Further, Defendant's subsequent conduct in seeking to enforce the Agreement "evinces an intent to bound by [it]." *See id.* at 176. On October 24, 2018, less than two weeks after service of summons, Defendant notified Plaintiff via email that the Agreement governs her claims and requested that the "matter be moved to arbitration." (*See* Dkt. No. 17-1, Ex. A at 4.) Plaintiff refused to do so. (Dkt. No. 17-1 at ¶ 5.) On November 2, 2018, Defendant inquired via email whether Plaintiff would reconsider voluntarily submitting the case to arbitration. (Dkt. No. 17-1, Ex. B at 13.) Thus, as in *Serafin*, Plaintiff here "does not, and cannot dispute that [Defendant] has at all times performed all duties required of it under the arbitration agreement" by seeking to arbitrate the dispute at issue. *See Serafin,* 235 Cal. 4th at 177.

Defendant's conduct in drafting and seeking to enforce the Agreement and Plaintiff's acceptance of the Agreement through her signature evince an agreement to arbitrate. Further, the plain terms of the Agreement cover Plaintiff's employment discrimination claims. Thus, the terms of the Agreement unambiguously show the parties' intent to arbitrate the type of claims alleged in Plaintiff's complaint—employment discrimination claims brought under federal and state law.

Defendant has satisfied its burden of demonstrating a valid agreement to arbitrate the claims at issue. The Court next considers whether Plaintiff has satisfied her burden of showing that the Agreement is unconscionable, and concludes that she has not.

### B. The Agreement is not Unconscionable

If a court concludes that there is a valid agreement to arbitrate, it must compel arbitration unless it determines there are grounds for revocation. 9 U.S.C. § 2. One such ground is unconscionability. *Jackson*, 561 U.S. at 66. Here, Plaintiff argues that even if "the parties mutually assented to an arbitration agreement," the Agreement's terms are procedurally and substantively unconscionable. (Dkt. No. 21 at 2.)

As previously discussed, "the party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017). Plaintiff must thus "demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable." *Id.*; *see also Armendariz v. Found. Health Psychare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (noting that "procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability."). Procedural and substantive unconscionability "need not be present in the same degree." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015). There is instead a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (internal quotation marks and citation omitted). "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Id.* at 912.

9

### 1.     Procedural Unconscionability

The procedural element of unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012). Plaintiff argues that the Agreement is procedurally unconscionable because it is: (1) a boilerplate contract of adhesion; and (2) "Defendant failed to attach the governing AAA rules in the arbitration agreement, it did not specifically cite which of the many AAA rules apply, and it did not give Plaintiff time to find the AAA rules." (Dkt. No. 21 at 7.)  The Court addresses each argument in turn.

### a.     Contract of Adhesion

Defendant does not dispute that the Agreement is a contract of adhesion.  (*See* Dkt. No. 22 at 4.)  The Ninth Circuit has recognized that "[w]hile California courts have found that 'the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability' in a range of circumstances, the California Supreme Court has not adopted a rule that an adhesion contract is per se unconscionable."  *Poublon*, 846 F.3d at 1261 (quoting *Sanchez*, 61 Cal. 4th at 915); *see also Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 243 (Cal. Ct. App. 2016) ("The Agreement and its arbitration provision therefore contain at least some degree of procedural unconscionability because it is undisputed the Agreement is an adhesion contract in the employment context.").  Thus, "the adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most."[6]  *Poublon*, 846 F.3d at 1262 (citing *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016) (noting that the mere adhesive nature of an employment contract does not warrant the "same degree of scrutiny as contracts of adhesion that involve surprise or other sharp practices.") (internal quotation marks and citation omitted)).

---

[6] Plaintiff cites *Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107, 114 (Cal. App. Ct. 2004), for the proposition that "[a]n arbitration agreement that is an essential part of a 'take it or leave it' employment condition, without more, is procedurally unconscionable."  The degree of procedural unconscionability is key, however, and as the Ninth Circuit recognized in *Poublon*, the adhesive nature of an employment contract, without additional "indications of oppression or surprise," gives rise to only "a low degree of procedural unconscionability at most."  846 F.3d at 1262.

The Court must therefore determine "whether there are other indications of oppression or surprise that would lead California courts to conclude that the degree of procedural unconscionability is high." *Poublon*, 846 F.3d at 1262. Plaintiff argues that Defendant's failure to attach to the Agreement the applicable AAA rules, cite the specific rules, or allow Plaintiff time to find the rules are indicators of oppression. The Court disagrees.

### b. Incorporation of the AAA Rules

The Agreement states, in pertinent part:

> Arbitration under this Agreement shall be conducted before a single arbitrator of the American Arbitration ("AAA") (unless the Parties agree upon another mutually acceptable arbitrator, in which case the arbitration will be conducted before such mutually acceptable arbitrator) in accordance with and selected pursuant to the rules and procedures of the Employment Arbitration Rules of the AAA ("AAA Rules") to the extent the AAA Rules do not conflict with the terms of this Agreement.

(Dkt. No. 17-2, Ex. A at 8; *see also* Ex. B at 19 (containing nearly identical terms).) The section further states: "Information about AAA is available from its website www.adr.org. A Covered Party may contact them directly at 1-800-778-7879." (*Id.*)

Plaintiff argues that Defendant's failure to attach the applicable AAA rules was procedurally unconscionable. The Court is not persuaded for two reasons. First, California courts have specifically rejected the argument that failure to attach the AAA rules alone constitutes procedural unconscionability. *See, e.g., Serafin*, 235 Cal. App. 4th at 180 (noting with approval "cases that have found the failure to attach the applicable AAA rules alone did not render the agreement procedurally unconscionable."); *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1472 (Cal. Ct. App. 2013) (finding that "the failure to attach the AAA rules, standing alone, is insufficient grounds to support a finding of procedural unconscionability."). Second, in *Poublon*, the Ninth Circuit rejected the argument "that the employer's failure to provide a copy of the AAA rules, which were incorporated by reference in the arbitration agreement, gave rise to a 'greater degree of procedural unconscionability.'" 846 F.3d at 1262 (quoting *Baltazar*, 62 Cal. 4th at 1246). The *Poublon* court cited with approval *Baltazar's* holding that "incorporation by reference, without more, does not affect the finding of procedural unconscionability," finding that it was

"consistent with California's general rule that parties may validly incorporate by reference into their contract the terms of another document provided certain conditions are met." 846 F.3d at 1262 (collecting cases) (internal quotation marks and citation omitted).

For the incorporation-by-reference doctrine to apply, "the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." *Shaw v. Regents of Univ. of California*, 58 Cal. App. 4th 44, 54 (Cal. Ct. App. 1997). As in *Poublon* and *Baltazar*, those conditions are met here. The Agreement, which was signed by Plaintiff, identifies the applicable AAA rules ("Employment Arbitration Rules") and directs employees to the AAA website for further information and provides the AAA's phone number for direct contact. Because the Agreement incorporated the AAA rules by reference, the failure to attach the rules does not affect the degree of procedural unconscionability. Plaintiff's argument that the Agreement is oppressive based on Defendant's failure to "specifically cite which of the many AAA rules . . . apply" to the Agreement is unpersuasive for the same reason—the Agreement identifies the applicable AAA rules ("Employment Arbitration Rules") and in doing so, incorporates them by reference.

Plaintiff further argues that the Agreement is procedurally unconscionable because Defendant "did not give Plaintiff time to find the AAA rules." (*See* Dkt. No. 21 at 7.) However, Plaintiff provides no facts to support this assertion, and the circumstances in which the she executed the Agreements do not suggest that she was rushed into signing them. The May 2010 Agreement was attached to Plaintiff's offer letter, which is dated May 7, 2010 and appears to have been mailed by Defendant from its office in Downey, California to Plaintiff's residence in San Leandro, California. Plaintiff signed the letter and Binding Arbitration Affirmation four days later on May 11, 2010. Even assuming the letter spent two to three days in transit, Plaintiff does not explain how she was rushed into signing the letter such that she would have been unable to access the AAA website or call the AAA telephone number noted in the Agreement prior to executing the Agreement and returning it to Defendant. Plaintiff likewise does not allege any facts suggesting that she was rushed into signing the March 2015 CWMA and initialing every page of the attached

Agreement.

Plaintiff's reliance on *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227 (Cal. Ct. App. 2016) does not counsel a different result. In *Carbajal*, the court concluded that the defendant-employer failed to meet its threshold burden of demonstrating that the FAA applied to its arbitration agreement because "it presented no evidence to establish any connection to interstate commerce." 245 Cal. App. 4th at 239. As to the degree of procedural unconscionability, the court found that it rose "to a moderate level" for the following reasons:

> [T]he Agreement requires Carbajal to arbitrate her claims "in accordance with the rules of the [AAA]" without identifying which of AAA's nearly 100 different sets of active rules will apply. Before requiring Carbajal to sign the Agreement, CW Painting did not provide Carbajal a copy of the rules it though would govern, tell her where she could find a copy of the rules, offer to explain the arbitration provision, or give her an opportunity to review any rules. Moreover, when Carbajal deposed CW Painting's person most knowledgeable about the Agreement and its arbitration provision, the designated person could not identify which set of AAA rules applied even when he was provided with a list of AAA's active and archived rules.

*Id.* at 244. Setting aside that failure to provide a copy of the AAA rules does not affect procedural unconscionability where the agreement properly incorporates them by reference, *see Poublon*, 846 F.3d at 1262, the facts of *Carbajal* are distinguishable. The *Carbajal* court noted that the defendant-employer "would have had to identify the Employment Arbitration Rules and Mediation Procedures as the governing rules" to adequately identify the applicable AAA rules but failed to do so. 245 Cal. App. 4th at 246. Conversely, the Agreement here *does* specify the applicable AAA rules as the "Employment Arbitration Rules of the AAA." (*See* Dkt. No. 17-2, Ex. A at 8; *see also* Ex. B at 19.) The *Carbajal* court found that the defendant-employer did not "tell [the plaintiff] where she could find a copy of the rules." 245 Cal. App. 4th at 244. Here, the Agreement directs employees to the AAA's website and provides the AAA's telephone number. (*See* Dkt. No. 17-2, Ex. A at 8; *see also* Ex. B at 19 ("Information about AAA is available from its website www.adr.org. A Covered Party may contact them directly at 1-800-778-7879.").) The defendant-employer in *Carbajal* "did not give [the plaintiff] an opportunity to review any rules." 245 Cal. App. 4th at 244 n.3 ("presum[ing] the trial court found CW Painting required Carbajal to

sign the Agreement at the time of her interview without explaining it to her or giving her the opportunity to identify and review the governing rules.").  As previously discussed, there is no evidence here to suggest that Plaintiff was rushed into signing either the May 2010 or March 2015 Agreements without having time to review the governing rules.

Simply put, *Carbajal* does not support Plaintiff's assertions of procedural unconscionability because that case is distinguishable on its facts.[7]  Indeed, the *Carbajal* court distinguished the "moderate level of procedural unconscionability" found there to the *Serafin* court's holding that the "adhesive arbitration provision in employment agreement gave rise to only [a] minimal degree of procedural unconscionability because [the] agreement identified governing AAA rules and informed employee where to obtain [a] copy."  *Carbajal*, 245 Cal. App. 4th at 247 (citing *Serafin*, 235 Cal. App. 4th at 179-81).

The adhesive nature of the Agreement presents only a minimal degree of procedural unconscionability, and Plaintiff fails to show additional factors of oppression or surprise that would render the Agreement procedurally improper.  Thus, Plaintiff must demonstrate a high degree of substantive unconscionability to render the Agreement unconscionable.  Plaintiff fails to do so.

### 2. Substantive Unconscionability

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided."  *Pinnacle Museum Tower Ass'n*, 55 Cal. 4th at 246.  Plaintiff argues that the Agreement is substantively unconscionable because it: (1) "provides the Defendant with the unilateral power to amend the agreement"; and (2) "prevents Plaintiff from engaging in meaningful discovery."  (*See* Dkt. No. 21 at 8-9.)

//

//

---

[7] Plaintiff's reliance on *Magno v. The Coll. Network, Inc.*, 1 Cal. App. 5th 277 (Cal. Ct. App. 2016) is similarly unpersuasive.  The *Magno* court affirmed the trial court's finding of procedural unconscionability based on "substantial evidence" that the plaintiffs "were rushed through the signing process, had no ability to negotiate, did not see the arbitration language buried on the back page of the preprinted carbon paper forms, and did not separately initial the arbitration clause."  1 Cal. App. 5th at 285.  Those facts are not present here.

### a. Unilateral Modification/Termination Rights

The Agreement provides, in pertinent part:

> Amendment or Termination of Agreement: JPMorgan Chase reserves the right to amend, modify or discontinue this Agreement at any time in its sole discretion to the extent permitted by applicable law. Such amendments may be made by publishing them on JPMorgan Chase Intranet or by separate notification to me and shall be effective thirty (30) calendar days after such amendments are provided to me and will apply on a going forward basis. Continuation of my employment after receiving such amendments will be considered my acceptance of the amended terms.

(Dkt. No. 17-2, Ex. A at 10; Ex. B at 22.) Plaintiff insists that Defendant's ability to "amend, modify, and discontinue the agreement at any time" renders the Agreement illusory and therefore substantively unconscionable. (Dkt. No. 21 at 9.) California courts have rejected this exact argument because the implied duty of good faith and fair dealing is inherent in any contract. *See, e.g., Serafin*, 235 Cal. App. 4th at 175-76 (noting that "[g]enerally, an employer has the right to unilaterally alter the terms of employment, provided that the alteration does not violate a statute or breach an implied or express contractual agreement[,]" and finding that the "implied covenant of good faith and fair dealing" saved the "arbitration contract from being illusory") (internal quotation marks and citations omitted); *Casas v. Carmax Auto Superstores*, 224 Cal. App. 4th 1233, 1237 (Cal. Ct. App. 2014) (holding that "even a modification clause not providing for advance notice does not render an agreement illusory, because the agreement also contains an implied covenant of good faith and fair dealing" and therefore does not invalidate an arbitration provision); *Serpa v. California Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 708 (Cal. Ct. App. 2013) ("[T]he implied covenant of good faith and fair dealing limits the employer's authority to unilaterally modify the arbitration agreement and saves that agreement from being illusory and thus unconscionable."); *see also Poublon*, 846 F.3d at 1269 ("California courts have held that the implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way that would make it unconscionable.") (internal quotation marks and citation omitted). Indeed, the plain terms of the clause provide that Defendant may only act "amend, modify or discontinue the Agreement *. . . to the extent permitted by applicable law.*" (Dkt. No. 17-2, Ex. A at 10; Ex. B at 22 (emphasis added).) This acknowledged limitation

15

and the implied covenant of good faith and fair dealing saves the Agreement from being unconscionable under California law.

Plaintiff's reliance on *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003), fails to persuade. First, *Ingle* was decided in 2003, long before the unanimous California line of cases expressly holding that the unilateral right to modify an arbitration agreement in the future is not substantively unconscionable because of the implied covenant of good faith and fair dealing. *See Herrera v. CarMax Auto Superstores Calif. LLC*, 2014 WL 3398363 (C.D. Cal. July 2, 2014) (declining to follow *Ingle* and noting that a federal trial court is not bound by a Ninth Circuit decision on a state law question if the state courts subsequently disagreed with the Ninth Circuit). Second, the *Ingle* unilateral modification provision was retroactive, that is, it could apply to disputes that arose even before the modification of the arbitration agreement. The Ninth Circuit thus reasoned that there was no real consent to arbitration, and the two cases it cited held merely that employee consent is required. *Ingle*, 328 F.3d at 1179. The provision at issue here, in contrast, only applies on a "going forward" basis after notice is given and the employee's consent is obtained through continued employment. Third, even assuming the provision is unconscionable notwithstanding California caselaw to the contrary, no court has held that the presence of such a provision itself warrants invalidating an agreement to arbitrate. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016) ("Although we have held that a unilateral modification provision *itself* may be unconscionable, *see Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003), we have not held that such an unconscionable provision makes the arbitration provision or the contract as a whole unenforceable.") (emphasis added). Plaintiff has not met her burden of showing that the provision is substantively unconscionable, especially given that the arbitration agreement that applies to Plaintiff's dispute is the agreement she expressly agreed to and not some hypothetical amendment that Defendant may make in the future for employees other than Plaintiff.

### b. Limitation of Discovery

The California Supreme Court has recognized "that a limitation on discovery is one important component of the 'simplicity, informality, and expedition of arbitration.'" *Armendariz*,

24 Cal. at 106 n.11 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)).  A party is thus "at least entitled to discovery sufficient to adequately arbitrate their statutory claim." *Id.* at 106.  "Ultimately it is up to the arbitrator and the reviewing court to balance the need for simplicity in arbitration with the discovery needs of the parties."  *Mercuro v. Super. Ct.*, 96 Cal. App. 4th 167, 184 (Cal. Ct. App. 2002) (citing *Armendariz*, 24 Cal. at 106 n.11).

The Agreement's discovery clause provides, in pertinent part:

> Discovery:  Discovery requests and the provision of discovery must be consistent with this Agreement, general standards of due process, the Rules of AAA and the expedited nature of arbitration.  The guidelines below are only guidelines, do not establish a minimum or a maximum of discovery, and will be applied subject to these principles.  Thus, there may be cases which warrant more or less discovery than that outlined below.
>
> . . . .
>
> In general, the Parties may take the depositions of all expert witnesses and up to 3 other individuals.  Any individual who certifies he/she has no direct knowledge of the facts should not be deposed as a fact witness. . . . The arbitrator may alter the timing and scope of discovery as necessary or upon request of the Parties.
>
> The arbitrator will resolve discovery disputes and may expand or restrict the scope of discovery within his or her reasonable discretion, and the rules of AAA consistent with the expedited nature of arbitration.

(Dkt. No. 17-2, Ex. B at 21.)  Plaintiff argues that the discovery provision is substantively unconscionable because "[u]nder a reasonable reading of these provisions, an employee is precluded from deposing beyond 3 individuals aside from expert witnesses."  (Dkt. No. 21 at 10.)  Further, Plaintiff asserts that "witnesses should not be allowed to avoid depositions by merely asserting that they lack knowledge of Plaintiff's claim."  (*Id.*)   The Court disagrees on both counts.

First, despite Plaintiff's assertion, the discovery provision does not preclude an employee from deposing more than three individuals aside from expert witnesses.  The plain language of the provision states instead that the specified limitations are only "guidelines" and "do not establish a minimum or a maximum of discovery."  (*See* Dkt. No. 17-2, Ex. B at 21.)  The provision explains that the arbitrator "may alter the timing and scope of discovery as necessary or upon request of the

Parties," and "may expand or restrict the scope of discovery within his or her reasonable discretion." (*Id.*)  In other words, either party may request to expand the scope of discovery beyond the general guidelines and it is in the reasonable discretion of the arbitrator to grant that request.

Plaintiff also fails to demonstrate "that she would be unable to vindicate her rights" under the provision's reasonable discretion standard.  *See Poublon* 846 F.3d at 1271.  In *Poublon*, the court held that a discovery provision was not substantively unconscionable where it allowed for three depositions and "additional discovery merely by showing good cause, which would include a demonstrated need for discovery sufficient to arbitrate her claim," in the absence of any showing that the plaintiff could not prevail on her claim based on that standard.  *Id.* (internal quotation marks and citation omitted).  Here, Plaintiff "identifies four witnesses in the Complaint," and argues that limiting her to only three fact witnesses "would substantially impair [her] ability to arbitrate her claims."  (*See* Dkt. No. 21 at 10.)  As previously discussed, however, Plaintiff is not *expressly limited* to only three fact witnesses.  The Agreement provides that Plaintiff may request to expand the scope of discovery beyond the guideline limitation of three non-expert witnesses, and it is in the *reasonable discretion* of the arbitrator to grant that request.  Plaintiff makes no showing that she would be unable to depose the identified fact witnesses under that permissive standard.

California courts have found similar discovery provisions not unconscionable, even though they contained a more burdensome standard for expanding the scope of discovery.  *See, e.g., Sanchez v. CarMax*, 224 Cal. App. 4th 398, 404-06 (Cal. Ct. App. 2014) (finding discovery provision conscionable where it limited "each party to 20 interrogatories and three depositions," but provided "that on request of any party and a showing of '*substantial need*,' the arbitrator may allow additional discovery if it 'is not unduly burdensome and will not unduly delay the conclusion of the arbitration.'") (emphasis added); *Mercuro*, 96 Cal. App. 4th at 183-84 (finding discovery provision conscionable where it limited the plaintiff "to a total of 30 discovery requests of any kind, including subparts," and restricted him "to three depositions," which "count[ed] toward the aggregate 30 discovery request limit," absent a showing of "good cause" sufficient to

overcome the agreement's "presumption against increasing the aggregate limit of requests.")
(internal quotation marks omitted).  The cases Plaintiff cites in support of her argument are
distinguishable on their facts and thus not persuasive.  *See Baxter v. Genworth N. Am. Corp.*, 16
Cal. App. 5th 713, 727 (Cal. Ct. App. 2017) (finding substantive unconscionability where
discovery provision limited parties to two deponents—among other limitations—absent a showing
of "good and sufficient cause," and plaintiff "estimated she would need to depose an estimated six
to ten witnesses, six of whom [were] already identified in the complaint."); *Fitz v. NCR Corp.*, 118
Cal. App. 4th 702, 716-17 (Cal. Ct. App. 2004) (finding substantive unconscionability where
discovery provision limited the plaintiff to two non-expert depositions, with no additional
discovery "unless the arbitrator finds a compelling need to allow it" based on a party's showing
"that a fair hearing would be *impossible* without additional discovery.").

Second, limiting non-expert deposition testimony to witnesses who certify that they have
"direct knowledge of the facts" at issue is consistent with the Federal Rules of Evidence.  *See* Fed.
R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to
support a finding that the witness has personal knowledge of the matter.").  Thus, requiring a fact
witness to testify based on personal knowledge of the facts or "what he thinks he knows from
personal perception" is not substantively unconscionable.  *See id.* advisory committee's note to
1972 proposed rules.  Plaintiff cites no authority to the contrary.

Because Plaintiff fails to demonstrate that she would be unable to vindicate her rights
under the Agreement's guideline limitations on discovery and because the provision is not "overly
harsh, . . . unduly oppressive, . . . so one-sided as to shock the conscience, . . . or unfairly one-
sided," it is not substantively unconscionable.  *See Sanchez*, 61 Cal. 4th at 910-11 (internal
quotation marks and citations omitted) (noting various phrases used to describe substantively
unconscionable contract terms).

***

Defendant has satisfied its burden of demonstrating a valid agreement to arbitrate the
claims at issue.  And in sum, Plaintiff has shown only a minimal degree of procedural
unconscionability due to the adhesive nature of the contract.  Plaintiff's showing is insufficient to

19

render the Agreement as a whole unconscionable without a high degree of substantive

unconscionability, a showing that has not and cannot be made on the present record.  Accordingly,

Defendant's motion to compel must be granted.

## II.        Stay or Dismiss

In light of the Court's conclusion that Plaintiff's claims are subject to arbitration, the only

remaining question is whether the action should be stayed or dismissed.  Defendant asserts that

dismissal is warranted, and alternatively, requests a stay of proceedings pursuant to 9 U.S.C. § 3.

The FAA authorizes a court to grant a stay pending resolution of arbitration.  *See* 9 U.S.C.

§ 3 ("[T]he court . . . upon being satisfied that the issue involved . . . is referable to arbitration . . .

shall on application of one of the parties stay the trial of the action until such arbitration has been

had.").  However, nothing in the FAA limits the court's authority to dismiss a case, especially

when "all claims are barred by an arbitration clause."  *Sparling v. Hoffman Constr. Co.*, 864 F.2d

635, 638 (9th Cir. 1988).  Thus, the Ninth Circuit has held that courts have discretion under 9

U.S.C. § 3 to either stay or dismiss claims that are subject to an arbitration agreement.  *See id.*; *see

also Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004)

(holding that the district court properly exercised its discretion in dismissing an action where all

claims were subject to arbitration).  Courts in this District regularly dismiss actions after granting

motions to compel arbitration where all of the plaintiff's claims were subject to arbitration.  *See,

e.g., Castaldi v. Signature Retail Servs., Inc.*, No. 15-cv-00737-JSC, 2016 WL 7042991 (N.D. Cal.

Jan. 20, 2016); *Chau v. EMC Corp.*, No. C-13-04806-RMW, 2014 WL 842579, at *6 (N.D. Cal.

Feb. 28, 2014); *Morris v. Ernst & Young LLP*, No. C-12-04964 RMW, 2013 WL 3460052, at *10

(N.D. Cal. July 9, 2013); *DeMartini v. Johns*, No. 3:12-cv-03929-JCS, 2012 WL 4808448, at *6

(N.D. Cal. Oct. 9, 2012); *Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal.

2011).  Because all of the claims asserted in this case must be arbitrated, leaving no claims to be

resolved following arbitration, the Court concludes that dismissal of this action without prejudice

is appropriate.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's motion to compel

arbitration and DISMISSES this action without prejudice to reinstatement should further proceedings be necessary following arbitration. The Court DENIES as moot Defendant's motion to stay discovery. The Clerk of Court shall close the case.

This Order disposes of Docket No. 17 & 18.

**IT IS SO ORDERED.**

Dated: February 21, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge